ARCHER & GREINER, P.C.
1211 Avenue of the Americas
New York, New York 10036
Gerard DiConza
Lance A. Schildkraut
Tel: (212) 682-4940
Email:  gdiconza@archerlaw.com
           lschildkraut@archerlaw.com

*Co-Counsel for the Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re

FLYWHEEL SPORTS PARENT, INC., *et al.*,                    Chapter 7
                                                          Case Nos. 20-12157 (JLG)

                    Debtors.[1]                           (Jointly Administered)
---------------------------------------------------------x

**NOTICE OF HEARING ON THE CHAPTER 7 TRUSTEE'S MOTION
FOR AN ORDER APPROVING STIPULATION BETWEEN THE
CHAPTER 7 TRUSTEE AND AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC. PURSUANT TO SECTIONS 105(a)
AND 542(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019**

        **PLEASE TAKE NOTICE** that a hearing will be held before the Honorable James L.

Garrity, United States Bankruptcy Judge, United States Bankruptcy Court, One Bowling Green,

New York, New York 10004, on **March 9, 2021, at 11:00 a.m.** (prevailing Eastern Time) (the

"Hearing Date") to consider the annexed Motion dated February 9, 2021 (the "Motion") of

Angela Tese-Milner, the Chapter 7 Trustee (the "Trustee") for the above-captioned debtors, for

entry of an order, pursuant to sections 105(a) and 542(a) of title 11 of the United States Code, 11

---

[1]        The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Flywheel Sports Parent, Inc. (9114), Flywheel Sports, Inc. (5002), Flywheel Astor Place LLC (5002), Flywheel Buckhead LLC (5002), Flywheel CCDC, LLC (5002), Flywheel NM LLC (5002), Flywheel Park Avenue LLC (5002), Flywheel Playa Vista, LLC (5002), Flywheel San Francisco, LLC (5002), Flywheel Topanga, LLC (5002 ), Flywheel Walnut Creek LLC (5002), Flywheel Sports Scottsdale, LLC (5002), Flywheel Santa Monica, LLC (5002), Flywheel Williamsburg LLC (5002), Flywheel Domain LLC (5002), and Flywheel Denver Union Station, LLC (5002).

U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the stipulation between the Trustee and American Express Travel Related Services Company, Inc.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion shall be in writing, shall conform to the Bankruptcy Code, the Bankruptcy Rules and Local Rules of the Bankruptcy Court, shall set forth the name of the objecting party, the basis for the objection, and the specific grounds therefore, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two single-spaced hard copies delivered directly to Chambers) and served in accordance with General Order M-399, and upon (i) Archer & Greiner, P.C., 1211 Avenue of the Americas, Suite 2750, New York, New York 10036, Attn: Gerard DiConza (gdiconza@archerlaw.com), and (ii) American Express Travel Related Services Company, Inc., 200 Vesey Street, New York, New York 10285, Attn: Matthew Heimann (matthew.heimann@aexp.com), so as to actually be filed with the Court and received no later than **March 2, 2021 at 4:00 p.m.** (prevailing Eastern Time).

**PLEASE TAKE FURTHER NOTICE** that if no objection is timely filed and received, the Court may approve the Motion on the Hearing Date. Objecting parties are required to attend on the Hearing Date and failure to appear may result in relief being granted or denied upon default.

Dated: February 9, 2021
     New York, New York

ARCHER & GREINER, P.C.

By:    /s/ Gerard DiConza       
       Gerard DiConza
       1211 Avenue of the Americas
       New York, New York 10036
       Tel:  (212) 682-4940
       Email:  gdiconza@archerlaw.com

       Co-Counsel for the Chapter 7 Trustee

ARCHER & GREINER, P.C.
1211 Avenue of the Americas
New York, New York 10036
Gerard DiConza
Lance A. Schildkraut
Tel: (212) 682-4940
Email: gdiconza@archerlaw.com
        lschildkraut@archerlaw.com

*Co-Counsel for the Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re

FLYWHEEL SPORTS PARENT, INC., *et al.*,                Chapter 7
                                                       Case Nos. 20-12157 (JLG)

                              Debtors.[1]              (Jointly Administered)

-----------------------------------------------------------x

**CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER APPROVING STIPULATION
BETWEEN THE CHAPTER 7 TRUSTEE AND AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC. PURSUANT TO SECTIONS 105(a)
AND 542(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019**

TO THE HONORABLE JAMES L. GARRITY, JR.,
UNITED STATES BANKRUPTCY JUDGE:

Angela Tese-Milner, the chapter 7 trustee (the "Trustee") of the estates of the above-

captioned debtors (collectively, the "Debtors"), submits this motion (the "Motion"), for entry of

an order (the "Order"), substantially in the form annexed hereto as **Exhibit A**, pursuant to

sections 105(a) and 542 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the

"Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

---

[1]     The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax
identification number, are as follows: Flywheel Sports Parent, Inc. (9114), Flywheel Sports, Inc. (5002), Flywheel
Astor Place LLC (5002), Flywheel Buckhead LLC (5002), Flywheel CCDC, LLC (5002), Flywheel NM LLC
(5002), Flywheel Park Avenue LLC (5002), Flywheel Playa Vista, LLC (5002), Flywheel San Francisco, LLC
(5002), Flywheel Topanga, LLC (5002 ), Flywheel Walnut Creek LLC (5002), Flywheel Sports Scottsdale, LLC
(5002), Flywheel Santa Monica, LLC (5002), Flywheel Williamsburg LLC (5002), Flywheel Domain LLC (5002),
and Flywheel Denver Union Station, LLC (5002).

"Bankruptcy Rules"), approving the stipulation (the "Stipulation"), annexed hereto as **Exhibit B**, between the Trustee and American Express Travel Related Services Company, Inc. ("American Express"), and in support thereof, respectfully states that:

## Jurisdiction and Venue

1.	This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.	The bases for the relief requested herein are sections 105(a) and 542 of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

3.	On September 14, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  The Trustee was thereafter appointed the chapter 7 trustee of the Debtors' bankruptcy estates.

4.	On October 13, 2020, the Debtors filed their respective Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Schedules").  A section 341(a) meeting of creditors was held on October 26, 2020.

5.	Prior to the Covid-19 pandemic, the Debtors were the second largest spin bike operators in the United States, operating spin cycling boutiques and studios in approximately forty locations throughout the United States.  As a result of the pandemic, the Debtors closed their studios in March 2020 and ceased operating as of the Petition Date.

## Pre-Petition Financing

6.	The Debtors financed operations through various secured loan facilities, including that certain Credit Agreement dated as of June 15, 2018 (as amended, the "First Lien Credit

Agreement") among (i) Debtor, Flywheel Sports, Inc. (the "FSI"), (ii) certain Debtor guarantors party thereto, (iii) Cortland Capital Market Services LLC, as administrative agent (in such capacity, the "First Lien Agent"), and (iv) the lenders party thereto (the "First Lien Lenders").

7.      Pursuant to the First Lien Credit Agreement, the First Lien Lenders provided term loan commitments to the Debtors in an original principal amount of $30,000,000, and subsequently provided additional commitments up to $11,466,496 (the "First Lien Facility"). As of the Petition Date, the total amount outstanding under the First Lien Facility was no less than $37,269,467 (the "First Lien Obligations"), of which amount $34,892,294 was due and owing to FW AIV, LLC ("FW AIV"), the largest First Lien Lender with approximately 94% of the outstanding First Lien Obligations.

8.      The First Lien Obligations are secured by a first priority security interest in and continuing lien on "Collateral" (as defined in the First Lien Facility documents), including, all accounts, chattel paper, cash, cash equivalents and deposit accounts, general intangibles, instruments, and to the extent not otherwise included, all proceeds and products of any and all of the foregoing.

**American Express Merchant Agreement**

9.      Prior to the Petition Date, American Express provided credit card processing services and credit extension to FSI pursuant to that certain Agreement for American Express Card Acceptance and corresponding Merchant Regulations (collectively, as amended, the "Merchant Agreement").

10.     Pursuant to the Merchant Agreement, American Express was initially provided with reserve fund of $1.5 million to hold as collateral to secure customer chargebacks, adjustments, fees and other charges, obligations or liabilities that may become due under the

Merchant Agreement (collectively, the "Charges"). Pursuant to the terms of the Merchant Agreement, American Express is authorized to apply the Reserve to satisfy all Charges that may arise under the Merchant Agreement and other agreements between American Express and the Debtors. As of the Petition Date, American Express was holding approximately $1,399,428.54 in reserve as collateral for the FSI obligations under the Merchant Agreement (the "Reserve").[2]

11.    The First Lien Lenders have asserted that any portion of the Reserve returned to the Debtors' estates would constitute proceeds of Collateral under the First Lien Facility documents.

### Trustee's Demand for Turnover of the Reserve

12.    Shortly after the Petition Date, the Trustee made demand on American Express for a turnover of the Reserve funds. American Express informed the Trustee that it would consent to return a portion of the Reserve while it maintained a smaller amount as security for any potential additional exposure. Based on prior historical membership charges beginning as early as January 2020, American Express may face additional potential exposure for contingent claims of the Debtors' customers. American Express also provided the Trustee with statements and an accounting evidencing total Charges of $68,674.43 outstanding as of the Petition Date.

### The American Express Stipulation

13.    After extensive, good-faith and arms' length negotiations, the Trustee and American Express reach a settlement pursuant to which American Express will immediately return $540,000 of the Reserve, setoff its allowed claim, and keep the remainder for several

---

[2]    The Debtors' Schedules listed $1.5 million in Holdbacks held by American Express. American Express has verified that it only held approximately $1.4 million as of the Petition Date.

months as security for potential liabilities.  The pertinent terms of the settlement are set forth in the Stipulation and summarized below.[3]

(a) <u>Immediate Turnover of $540,000 to the Trustee</u>.  Upon execution of the Stipulation, American Express will release to the Trustee $540,000 from the Reserve (the "<u>Returned Funds</u>").  To the extent any of the Returned Funds are subject to liens of the First Lien Lenders, the Trustee shall hold those funds subject to any valid liens.[4]

(b) <u>Right to Setoff</u>.  Upon approval of the Stipulation, American Express shall be permitted to setoff against the Reserve its present claim for Charges ($68,674.43) (the "<u>Current Claim</u>").

(c) <u>Remaining Reserve</u>.  Upon release of the Returned Funds and setoff of the Current Claim, American Express will continue to withhold the Reserve with a balance of $791,325.47 (the "<u>Remaining Reserve</u>") to secure the payment of additional Charges that become due.

(d) <u>Review Period</u>.  American Express shall retain the Remaining Reserve through May 31, 2021, unless extended further by agreement of the Parties (the "<u>Review Period</u>").

(e) <u>Accounting During Review Period</u>.  During the Review Period, American Express will the Trustee with written notice and an accounting, including statements and supporting documents, of any additional Charges on a regular basis and the parties will work in good faith to resolve any disputes relating to any claims to setoff additional Charges from the Remaining Reserve.

(f) <u>Releases</u>.  The Debtors and their estates shall release American Express from any and all claims that the Debtors or their estates may have against American Express, including but not limited to, any claim for the avoidance of any payments made by the Debtors to American Express before the Petition Date.

---

[3]    To the extent there is any inconsistency between the summaries contained herein and the American Express Stipulation, the American Express Stipulation shall govern.

[4]    The Trustee filed a Motion [ECF No. 95] (the "<u>First Lien Release Motion</u>"), pursuant to which FW AIV agreed to assign to the Trustee its rights, interests and entitlement to the Reserve, the Returned Funds and Remaining Reserve upon approval of the First Lien Release Motion.  Upon approval of the First Lien Release Motion, the Debtors' estates will hold the Returned Funds, and any other proceeds from the Reserve, free and clear of any liens, claims and interests.  To the extent that Benvolio Ventures LLC ("<u>Benvolio</u>"), the only other lender under the First Lien Facility, asserts an interest in the Reserve and its proceeds, such claim is (a) limited to 6.4% (the approximate amount of Benvolio's claims under the First Lien Facility), and (b) subject to the Trustee's rights, remedies, defenses and claims, including surcharge rights under section 506(c) of the Bankruptcy Code.

**Relief Requested**

14.     By this Motion, the Trustee seeks entry of an Order, substantially in the form annexed hereto as **Exhibit A**, approving the Stipulation, pursuant to Bankruptcy Rule 9019(a).

**Basis for the Relief Requested**

15.     Bankruptcy Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is (a) fair and equitable and (b) in the best interests of the debtor's estate.  *See In re Refco Inc.*, 505 F.3d 109, 119 (2d Cir. 2007) ("a bankruptcy court's obligation is to determine whether a settlement is in the best interests of the estate") (emphasis omitted); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (applying "fair and equitable" standard to settlements pursuant to Bankruptcy Rule 9019); *In re Enron Corp.*, No. 02 Civ. 8489, 2003 WL 230838, at *2 (S.D.N.Y. Jan. 31, 2003) ("A bankruptcy court may approve a settlement where the proposed settlement is both fair and equitable and in the best interests of the estate.") (quotation omitted).

16.     Settlements and compromises should be rejected only if they fall "below the lowest point in the range of reasonableness." *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 75 (Bankr. S.D.N.Y. 2009) (stating that Bankruptcy Rule 9019 "does not require a court to conduct a mini-trial to 'decide the numerous questions of law and fact raised . . . but rather to canvass the issues' raised by the parties and decide whether a proposed settlement falls 'below the lowest point in the range of reasonableness'") (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) and *In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985)).

17.     In determining whether a proposed compromise and settlement is fair and equitable, the Second Circuit has concluded that a court should consider the following interrelated factors:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;
>
> (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;
>
> (4) whether other parties in interest support the settlement;
>
> (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;
>
> (6) the nature and breadth of releases to be obtained by officers and directors; and
>
> (7) the extent to which the settlement is the product of arm's length bargaining.

*Iridium Operating LLC*, 478 F.3d at 462 (citing *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

18.     The *Iridium* factors overwhelmingly support approval of the Stipulation as a sound exercise of the Trustee's business judgment.  First, the possibility of success in any litigation is uncertain and there can be no assurance that the Trustee would prevail in litigation. American Express is expressly authorized to apply the Reserve to satisfy Charges that may arise under the Merchant Agreement, is entitled to setoff rights under section 553 of the Bankruptcy Code, and was holding the Reserve (in an amount exceeding its claim amounts) as of the Petition Date.

19.     The other *Iridium* factors also support approval of the Stipulation.  As a result of FW AIV's waiver and assignment of its entitlement to the Reserve (and other Credit Card Receivables Assets as defined in the First Lien Release Motion) and any proceeds thereof, the Debtors' creditors will benefit from the recovery of the Reserve.  The Stipulation provides immediate cash and the potential for additional proceeds in a short period of time.

20.     The sixth *Iridium* factor is also satisfied.  The release in favor of American Express set forth in the Stipulation is narrowly tailored and limited to release only American Express for estate claims, including potential avoidance claims.  Any avoidance claims are subject to defenses, including that American Express was fully secured at the time of any transfers.

21.     Finally, the Stipulation was the product of good-faith and arm's-length bargaining between the Trustee and American Express.  After extensive negotiations, the Trustee ultimately determined that, in her business judgment, it was in the best interest of the Debtors' estates to agree to the Stipulation.  Based on the foregoing, the Trustee respectfully submits that the terms of the Stipulation are fair, reasonable, and in the best interest of the Debtors' estates and creditors.

## <u>Notice</u>

22.     The Trustee will cause a copy of this Motion to be filed electronically and served by email or regular mail on:  (i) the United States Trustee; (ii) Debtors' counsel; (iii) the First Lien Agent; (iv) FW AIV; (v) Benvolio; (vi) American Express; and (vii) any party having requested notice in the Debtors' cases.  In accordance with the Order dated October 11, 2020 establishing notice procedures in the Debtors' cases, the Trustee submits that the notice provided

of this Motion is adequate, sufficient under the circumstances and that no other or further notice need be provided.

23.     No previous request for the relief sought herein has been made to this or any other court.

## Conclusion

**WHEREFORE**, the Trustee respectfully requests entry of the Order approving the Stipulation, substantially in the form annexed hereto as **Exhibit A**, and granting the relief requested herein and such other and further relief as is just and proper.

Dated: February 9, 2021
      New York, New York

Respectfully submitted,

ARCHER & GREINER, P.C.

By:    /s/ Gerard DiConza
       Gerard DiConza
       1211 Avenue of the Americas
       New York, New York 10036
       Tel:  (212) 682-4940
       Email:  gdiconza@archerlaw.com

*Co-Counsel for the Chapter 7 Trustee*

**EXHIBIT A**

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re

FLYWHEEL SPORTS PARENT, INC., *et al.*,          Chapter 7
                                            Case Nos. 20-12157 (JLG)

              Debtors.[1]               (Jointly Administered)
-----------------------------------------------------------x

**ORDER APPROVING STIPULATION BETWEEN THE CHAPTER 7 TRUSTEE
AND AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.**

      Upon consideration of the Chapter 7 Trustee's Motion dated February 9, 2021 (the

"Motion")[2] for entry of an Order, pursuant to sections 105(a) and 542 of title 11 of the United

States Code, 11 U.S.C. §§ 101 *et seq.* and Rule 9019 of the Federal Rules of Bankruptcy

Procedure, approving the stipulation between the Trustee and American Express Travel Related

Services Company, Inc. (the "Stipulation"), attached as **Exhibit B** to the Motion; and the Court

finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334; (b)

notice of the Motion, and any hearing thereon, was adequate under the circumstances; and (c) all

persons with standing have been afforded the opportunity to be heard on the Motion, the Court

hereby finds and concludes as follows:

      1.       The Motion is granted.

      2.       The Stipulation and all of its terms including the releases set forth therein, is

---

[1]     The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Flywheel Sports Parent, Inc. (9114), Flywheel Sports, Inc. (5002), Flywheel Astor Place LLC (5002), Flywheel Buckhead LLC (5002), Flywheel CCDC, LLC (5002), Flywheel NM LLC (5002), Flywheel Park Avenue LLC (5002), Flywheel Playa Vista, LLC (5002), Flywheel San Francisco, LLC (5002), Flywheel Topanga, LLC (5002 ), Flywheel Walnut Creek LLC (5002), Flywheel Sports Scottsdale, LLC (5002), Flywheel Santa Monica, LLC (5002), Flywheel Williamsburg LLC (5002), Flywheel Domain LLC (5002), and Flywheel Denver Union Station, LLC (5002).

[2]     Capitalized terms used by not otherwise defined herein shall have the meanings given to them in the Motion.

hereby approved in its entirety.

Dated: March ___, 2021
       New York, New York

 

                                                  _____
                                                  HONORABLE JAMES L. GARRITY, JR.
                                                  UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT B

## AMERICAN EXPRESS STIPULATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  | : |  |
|---|---|---|
| In re | : | Chapter 7 |
|  | : |  |
| FLYWHEEL SPORTS PARENT, INC., *et al.*, | : | Case No. 20-12157 (JLG) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

## STIPULATION AMONG THE CHAPTER 7 TRUSTEE
## AND AMERICAN EXPRESS TRAVEL
## RELATED SERVICES COMPANY, INC. REGARDING RESERVES

This Stipulation is entered into by and among, Angela Tese-Milner, as the chapter 7 trustee ("Trustee") of Flywheel Sports Parent, Inc. and its affiliated debtors, the Chapter 7 debtors (collectively, the "Debtors"), and American Express Travel Related Services Company, Inc. ("Amex"). Amex and the Trustee are referred to herein as the "Parties."

## RECITALS

**WHEREAS**, on September 14, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court"); and

**WHEREAS**, before the Petition Date, Amex provided credit card processing services and credit extension to Flywheel Sports, Inc. ("Flywheel"), one of the Debtors, pursuant to that certain Agreement for American Express Card Acceptance and corresponding Merchant Regulations (as amended, the "Merchant Agreement") and associated agreements; and

**WHEREAS**, prior to the Petition Date, in accordance with the terms of the Merchant Agreement, Amex established a reserve account with Flywheel with a balance of $1,399,428.58 as of the Petition Date (the "Reserve"), which is maintained by Amex to provide in part credit

protection with respect to chargebacks, adjustments, fees and other charges or balances that may become due from Flywheel to Amex (collectively, the "Charges"); and

WHEREAS, pursuant to the terms of the Merchant Agreement, Amex is authorized to apply the Reserve to satisfy all Charges that may arise under the Merchant Agreement and other agreements between Amex and the Debtors; and

WHEREAS, Amex has provided an accounting to the Trustee evidencing that, as of the Petition Date, Amex is owed $68,674.43 in Charges; and

WHEREAS, Amex alleges that it faces additional potential exposure in contingent claims of approximately $790,000 from Charges arising prior to the Petition Date; and

WHEREAS, by this Stipulation the Trustee is not conceding the validity or allowance of any additional or future Charges; and

NOW, THEREFORE, subject to the approval of this Stipulation by the Court, it is hereby stipulated and agreed by and between the Parties as follows:

1. The recitals set forth above are incorporated herein as though set forth at length below.

2. Within three (3) business days of execution of this Stipulation by the Parties, Amex shall return $540,000.00 from the Reserve (the "Returned Funds"), by wire transfer in accordance with wire instructions to be provided by the Trustee.

3. Pursuant to 11 U.S.C. §§ 362(d) and 553, Amex shall be permitted to setoff against the Reserve its present claim for Charges ($68,674.43), and continue to withhold the Reserve with a balance of $791,325.47 (the "Remaining Reserves").

4. The lenders (the "First Lien Lenders") under that certain Credit Agreement dated as of June 15, 2018 (as amended, restated, supplemented, waived, or otherwise modified from time

to time, the "<u>First Lien Credit Agreement</u>") assert that the Reserve, the Returned Funds and the Remaining Reserves constitute proceeds of the collateral that secures the Debtors' obligations under First Lien Credit Agreement.  The Trustee recently filed a Motion [ECF No. 95] (the "<u>First Lien Release Motion</u>"), pursuant to which FW AIV LLC, the First Lien Lender holding approximately 94% of the outstanding obligations and claims under the First Lien Credit Agreement will assign to the Trustee its rights, interests and entitlement to the Reserve, the Returned Funds and Remaining Reserves upon approval of the First Lien Release Motion.  The Returned Funds shall not be used by the Trustee for any purposes unless otherwise agreed to by the lenders under the First Lien Credit Agreement or pursuant to the order approving the First Lien Release Motion or such other order of this Court.

5.      Subject to the terms of this Stipulation, Amex shall be permitted to retain the Remaining Reserves ($791,325.47), from the approval of this Stipulation by the Court through May 31, 2021, unless extended further by agreement of the Parties (the "<u>Review Period</u>") to secure the payment of additional Charges becoming known during the Review Period.

6.      During the Review Period, Amex shall provide the Trustee with written notice and an accounting, including statements and supporting documents, of any additional Charges on a regular basis and the Parties shall work in good faith to resolve any disputes relating to Amex's claims to setoff additional Charges from the Remaining Reserves.

7.      Amex shall return to the Trustee the balance of the Remaining Reserves remaining after the payment of all additional Charges, if any, no later than ten (10) business days following the end of the Review Period, provided that as of such date there is no pending dispute between Amex and the Trustee with respect to any additional Charges.

8.      In the event of a dispute with respect to Amex's application of any portion of the Remaining Reserves or any additional Charges, Amex and the Trustee each reserve their respective rights to seek a determination of any such dispute by the Court. Amex shall continue to hold the amount of any disputed portion of the Remaining Reserves until final resolution of any such dispute, and shall return (i) the undisputed portion of the Remaining Reserves to the Trustee, as applicable, within ten (10) business days following the end of the Review Period, and (ii) the unapplied balance of the Remaining Reserves, if any, within ten (10) business days following resolution of such dispute by order of the Court or agreement of the Parties.

9.      Upon the Court's approval of this Stipulation, the Debtors and their estates shall be deemed to have released Amex from any and all claims that the Debtors or their estates may have against Amex, including but not limited to, any claim arising under chapter 5 of the Bankruptcy Code or similar state statute to avoid payments made by the Debtors to Amex before the Petition Date.  For the avoidance of doubt, such release shall not apply to any of Amex's obligations (i) under this Stipulation or (ii) relating to the Remaining Reserves or any additional Charges.

10.     Upon the Court's approval of this Stipulation, the Merchant Agreement shall be deemed rejected pursuant to 11 U.S.C. § 365(g); provided, however, that nothing shall prejudice Amex's rights and remedies under the Merchant Agreement.

11.     To the extent necessary, the Parties agree that Amex's timing for filing a proof of claim against the estate is extended until thirty (30) days after the Review Period.

12.     This Stipulation constitutes the complete agreement of the Parties and no modification or amendment to this Stipulation shall be valid unless it is in writing, signed by the Parties, and approved by the Court.

13.     This Stipulation may be executed in counterparts, any of which may be transmitted by facsimile or electronic mail, and each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

14.     This Stipulation is subject to approval of the Court, and the Parties agree to present the Stipulation to the Court in the most expeditious manner possible.

15.     This Stipulation shall be binding on the Parties hereto and all of their successors and assignees (including the Debtors and any successor-in-interest thereto).

16.     The Parties agree that the Court shall retain jurisdiction to resolve any dispute arising from or related to this Stipulation.

DATED:          February 9, 2021

**ARCHER & GREINER, P.C.**


/s/  Gerard DiConza
Gerard DiConza
1211 Avenue of the Americas
New York, New York 10036
Tel:  (212) 682-4940
Email:  gdiconza@archerlaw.com


*Co-counsel for Angela Tese-Milner,*
    *as Chapter 7 trustee*

**AMERICAN EXPRESS TRAVEL**
**RELATED SERVICES COMPANY, INC.**

/s/  *Matthew Heimann*

Matthew Heimann
Manager & Counsel
200 Vesey Street
New York, New York 10285
Email: matthew.heimann@aexp.com